U-Drive-Em Corporation *v.* Wiseman.

4-3638

Opinion delivered November 26, 1934.

*Akers & Thurman* and *E. R. Parham,* for appellants.

*Walter L. Pope,* Attorney General, *Pat Mehaffy,* Assistant, *Earl R. Wiseman* and *Louis Tarlowski,* for appellee.

Baker, J. This is a suit brought by the U-Drive-Em Corporation *et al.,* against Earl R. Wiseman, as Com-

missioner of Revenues, alleging the invalidity of § 31 of act No. 11, approved February 12, 1934.

A rather lengthy complaint was filed in which the plaintiffs alleged that various taxes and licenses have grown heavier and heavier and greater and greater until the passage of act No. 11, including the said § 31, which has imposed a burden upon the plaintiffs, and which, added to the other burdens already carried by taxicab operators, means that they cannot exist or continue to do business; that § 31 discriminates grossly between taxicab operators and in favor of buses using streets of cities and towns, and buses using State highways, and the ordinary automobiles used for business and commercial purposes. It is also urged that the State at one time surrendered its right to impose the collections now insisted upon, and that cities and towns have been permitted, under the laws of the State, to impose taxes or assessments by way of regulatory ordinances, and that, if the present alleged discriminatory taxes are insisted upon, as said § 31 is construed by the defendant Commissioner of Revenues, that part of § 31, imposing taxes so insisted upon, is void as being in contravention of Amendment No. 14 of the Constitution of the United States and § 21 of article No. 2 of the Constitution of the State of Arkansas, and therefore void; that the enforcement of the tax insisted upon by the Commissioner of Revenues would deprive the plaintiffs of equal protection of the laws, contrary to Amendment No. 14 of the said Constitution and § 18 of article 2 of the State Constitution.

It is unnecessary to set out more fully the effect of the complaint, demurrer and answer, as set forth in the pleadings. Proof was taken and exhibits were made to the testimony of witnesses, the effect of which proof is to show that several of the plaintiffs, according to statements filed, were not only not making any money or profits in the operation of their taxicabs, but that they were taking losses as they carried on their several businesses.

This proof will not be set forth except as it becomes pertinent in the discussion of the questions argued as necessary to conclusions reached in this opinion.

This is a class suit affecting all taxicab operators in the State. A history of the legislation affecting the highways in the State is not necessary. It is sufficient to say that at the time of the enactment of act No. 11, approved February 12, 1934, the State had defaulted in its bond payments and the interest thereon, and it became necessary to refund the bond issues, and at the same time to provide a method to meet accruing liabilities. It must be conceded at this time that the bonded indebtedness was excessive as compared with the State's ability to pay, and the necessary effect of such conditions was to impose somewhat onerous burdens upon those subject to taxation to save the State from future and further defaults in its indebtedness. It was necessary that, in addition to the tax on gasoline or motor fuel, there should be a tax on motors or automobiles, trucks, buses, etc.

Section 31 classified motor vehicles and imposed a tax upon these classes to be collected by the Commissioner of Revenues. One of the classifications, that being the one about which appellants are complaining, provided that "automobiles equipped with pnuematic tires used for the transportation of persons for hire shall be charged a fee of 45 cents per horsepower generated or developed by the motor propelling such vehicle, and in addition there shall be charged a fee, based upon the gross weight of the vehicle of $1.50 per hundred pounds or fraction thereof." The tax so imposed is substantially higher than the tax imposed upon the same automobile or same type of motor vehicle when not so used to transport persons for hire.

It is strongly urged by appellants that the classification made by the State is unfair and unequal. For the purposes of argument, that proposition might be conceded, and, even if that were true, it would not be a real reason for declaring § 31, or any part of it invalid. It is a principle very generally recognized by all of the courts that almost any system of taxation results in many inequalities and perhaps unfairness to particular classes,

and very frequently seriously affecting individuals composing a particular class. This arises more often, not out of the law itself, but out of the peculiar conditions under which classes, or individuals, may find themselves in their manner of doing business or location, rather than out of the classification.

This is illustrated in the brief filed for appellants in this case. They argue the fact rather seriously that they confine their operations to the streets of cities and towns, as distinguished from the system of State highways. It should be observed, however, that classification in itself does not confine them to the municipalities. They urge also that they are subject to licenses or taxes in the respective cities and towns in which they operate, and that these taxes or licenses are burdens; that they pay other taxes to the cities, municipalities, schools, etc., and that argument suggests, when considered, the fact that the burdens imposed by said § 31 are seemingly oppressive only by reason of the fact that there are other exactions, no one in itself which, as distinguished from the others, might be considered excessive.

Appellants recognize in their brief that the State has power to tax, but they ask us to construe § 31 aforesaid so as to grant relief from what they urge is an over-burdensome rate of taxation.

There is no ambiguity in said § 31. The language used, when given its ordinary meaning, is clear and understandable, and there is nothing to invite construction or interpretation. To attempt to read into this section any meaning, other than that which is clearly set forth upon its face, would be an invasion by the court of the legislative field, a course of action we feel unauthorized and unwilling to pursue. Our province can go no further than try to determine the legislative intent and to give effect to it, but in no instance shall we attempt to defeat the legislative intent so clearly expressed, and when it is not in violation of public policy as defined by the Constitution.

But it is urged that the act as written, if enforced by the Commissioner of Revenues, will be violative of the Fourteenth Amendment of the Constitution of the United

States and of § 21 of article 2 of the Constitution of the State of Arkansas.

Section 31 is not in conflict with either the State or United States Constitution. We call attention to a most recent case, decided by the United States Supreme Court, *A. Magnano Co.* v. *Hamilton,* 292 U. S. 40, 54 S. C. R. 599. The Supreme Court of the United States had under consideration the statute passed and enforced in the State of Washington, which levied an excise tax of fifteen cents per pound on butter substitutes sold in the State. That statute expressly exempted from taxation butter substitutes when sold for exportation to any other State of the nation, and more particularly the doing of any act which would constitute an unlawful burden on the sale or distribution of butter substitutes in violation of the interstate commerce act. The act was such that it did not impose any burden upon interstate commerce. Plaintiff in that case was selling a preparation called "Nucoa," which was a form of Oleomargarine, from the sale of which it derived a large net profit in the State of Washington. The plaintiff urged that the tax was prohibitive; that plaintiff could not, after the passage of that act, except in violation of it, make any intrastate sales; that the imposition of the tax had the effect of depriving the complainant of its property without due process of law, and of denying to it the equal protection of the laws, in violation of the Fourteenth Amendment; that the tax was not levied for a public purpose, but for the sole purpose of burdening or prohibiting the manufacture, importation and sale of Oleomargarine, in aid of the dairy industry. The court held (1) that, in respect of the equal protection clause, the differences between butter and Oleomargarine were sufficient to justify their separate classification for purposes of taxation, and (2) that the tax was for a public purpose, and this was disclosed by the use which was to be made of the revenue derived from the tax, and that there was no ulterior motive or purpose which may have influenced the Legislature in passing the act. That court said in the case: "The point may be conceded that the tax is so excessive that it may or will result in destroying the

intrastate business of the appellant; but that is precisely the point which was made in the attack upon the validity of the 10 per cent. tax imposed upon the notes of State banks involved in *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548, 19 L. ed. 482. This court there disposed of it by saying that the courts are without authority to prescribe limitations upon the exercise of the acknowledged powers of the legislative departments. 'The power to tax may be exercised oppressively upon persons, but the responsibility of the Legislature is not to the courts, but to the people by whom its members are elected.' Again in the McCray case, *supra,* answering a like contention, this court said (page 59 of 195 U. S., 24 S. Ct. 769, 778) that the argument rested upon the proposition 'that, although the tax be within the power, as enforcing it will destroy or restrict the manufacture of artificially colored Oleo-margarine, therefore the power to levy the tax did not obtain. This however is but to say that the question of power depends, not upon the authority conferred by the Constitution, but upon what may be the consequence arising from the exercise of the lawful authority.' And it was held that if a tax be within the lawful power of the Legislature, the exertion of the power may not be restrained because of the results to arise from its exercise.''

· This court in the case of *Fort Smith* v. *Scruggs,* 70 Ark. 549, 550, 69 S. W. 679, upheld an ordinance of the city of Fort Smith imposing a privilege tax, such as we have under consideration, upon buggies and wagons, making a distinction or classification of the same. The tax for a one-horse buggy or phaeton carrying not more than two persons was $2 per annum and for a one-horse delivery wagon $4 per annum. The power to impose such a tax and making such classifications was upheld, though the case was reversed for other reasons.

This court said, in the case of *Standard Oil Co.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753: ''It is not essential to the validity of a tax, either upon property or upon privilege, that it be absolutely free from inequalities or discrimination. The lawmakers have some discretion, even in legislating with reference to the power of taxation

as restricted by the terms of the Constitution, and they may determine the scope and extent of the exercise of the taxing power, and a mere incidental inequality or discrimination does not affect the validity of the statute.''

It is unnecessary to pursue this argument further than to call attention to the case of *Fitzgerald* v. *Gates,* 182 Ark. 655, 32 S. W. (2d) 634, in which case practically every question raised by the complaint in the instant case was settled by this court. In effect the last cited case decided the validity of the classifications and the imposition of a privilege tax upon those who operate motor vehicles for hire. This court said in that case: ''Whether a license tax is prohibitory is primarily a legislative question. 'All presumptions and intendments are in favor of the validity of the tax; in other words, the mere amount of the tax does not prove its invalidity.' The reasonableness of an occupation tax does not depend on whether or not a hardship results in an isolated case, but instead upon the general operation of the tax in the class to which it applies. The amount of the tax is not to be measured by the profits of the business taxed, and the mere fact that the particular person taxed conducted his business at a loss does not of itself make a tax unreasonable.'' Cooley, Taxation, (4th ed.) 3433. See also *Wright* v. *Hirsch,* 153 Ga. 229, 116 S. E. 795; *Western Union Tel. Co.* v. *Decatur,* 16 Ala. App. 679, 81 So. 199; *N., C. & St. L.* v. *Attala,* 118 Ala. 364, 24 So. 450; *N., C. & St. L.* v. *Ala. City,* 134 Ala. 414, 32 So. 731; *Veazie Bank* v. *Fenno,* 8 Wall. 553, 19 L. ed. 482; *Merchants' Transfer & Warehouse Co.* v. *Gates, supra.''*

It necessarily follows that the decision of the chancery court is correct. It will therefore be affirmed.