## James W. STREIGHT et al *v.* Charles D. RAGLAND, Arkansas Commissioner of Revenues

82-217                                    655 S.W.2d 459

Supreme Court of Arkansas
Opinion delivered July 25, 1983
[Rehearing denied September 19, 1983.]

*James F. Lane,* for appellants.

*Timothy J. Leathers, Joseph V. Svoboda, Kelly S. Jennings, Wayne Zakrzewski, Ann Fuchs, Joe Morphew,* by: *John H. Theis,* for appellee.

W. W. Bassett, Jr., Special Justice. This case comes before this Court on Appeal from a Decree of Special Chancellor H. Maurice Mitchell of the Pulaski County Chancery Court, Fourth Division, wherein the Special Chancellor under the Arkansas Constitution, upheld the constitutionality of state income tax exemptions on the retirement income of government employees. Since the legislation appellants challenge herein could affect the financial interest of the regularly elected members of this honorable court, all seven Justices of this Court, as well as all regular Pulaski County Chancellors, recused themselves from hearing or deciding any portion or part of this case. In due course, seven Special Justices were duly appointed as required by law and were thereafter sworn to participate and hear this specific case and to render their decision accordingly.

The within challenged legislation provides state income tax exemptions on retirement income of state and federal pensioners derived from certain government sources.[1] The Appellants, plaintiffs below, are six private retired taxpayers. They sought to have their state income tax on retirement income derived from private sources in the years 1978, 1979, and 1980 declared "illegal exactions"[2] or the

---

[1]Under Ark. Stat. Ann. § 12-3309 (Supp. 1981), all retiree benefits from the Arkansas Public Employees Retirement System, the Arkansas State Police Retirement System and the Arkansas State Highway Employees Retirement System are exempt in full. That section also exempts the first $6,000 in annual benefits from state supported college and university alternate retirement plans. Ark. Stat. Ann. § 84-2008 (2) (f) (Repl. 1980) and Ark. Stat. Ann. § 80-1444 (10.01) (Repl. 1980) exempts all retirement income derived from the Arkansas Teachers' Retirement System. Section 8 (2) (f) of Title 84 also extends a first $6,000 exemption to all annuities received by retired federal, state, county, municipal and school district employees and officers through any federal retirement system or any state, county, municipal or school district retirement system benefitting officials and employees of the State of Arkansas or any other state, or employees of any city, town, county or school district of the State of Arkansas or any state. Sec. 8.3 and 9 specifically extend the $6,000 exemption to federal civil service and military retirement benefits.

[2]*Ark. Const.*, Art. 16 § 13 provides that any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against enforcement of any illegal exactions whatever.

noted exemptions for government retirees only to be found unconstitutional.[3] This taxpayers suit was properly filed in the chancery court[4] for Pulaski County.[5] The court found that the Appellants had standing to sue and that the Arkansas Revenue Commissioner[6] could not avail himself of sovereign immunity since the suit was not against the State of Arkansas.[7] The Chancellor then decreed that the challenged tax exemptions were valid under the state constitution and were otherwise valid exercises of the taxation powers. We AFFIRM.

---

[3]*Ark. Const.*, Art. 2 § 18 consists of one of the several restrictions placed on the exercise of government power in the Declaration of Rights. It provides: "Privileges and Immunities — Equality. — The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens."

Art. 2, § 29 provides, among other things, that: ". . . we declare that everything in this article is excepted out of the general powers of the government, and shall forever remain inviolate; and that all laws contrary thereto, or to the other provisions herein contained, shall be void."

*Ark. Const.*, Amend. 14 provides: "Local or special acts prohibited. — Right to repeal acts by legislature. — The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

Although the parties have not raised or argued the application of the equal protection clause of the 14th Amendment to the United States Constitution, we have no hesitancy to consider that issue *sua sponte* later herein for in a taxpayers' suit, the plaintiffs represent the citizens as a whole and cannot be permitted to waive contentions that should be asserted. *Chandler* v. *Bd. of Trustees of the Arkansas Teachers Retirement System*, 236 Ark. 256, 365 S.W.2d 447 (1963).

[4]A chancery court has jurisdiction to enjoin the collection of an illegal tax. *Harrison* v. *Norton*, 104 Ark. 16, 148 S.W. 497 (1912).

[5]Ark. Stat. Ann. § 27-603 (Repl. 1979).

[6]We agree since standing has been held to be granted by the Arkansas Constitution (Art. 16 § 13, *supra*) in such actions. This standing is not restricted to illegal *local* exactions, but to any exactions *whatever,* which should include state taxation of local citizens. We nevertheless could find taxpayer standing under the now established double nexus test employed by federal courts if we were so inclined since the exemptions were enacted under the taxing power and are challenged under specific restrictions on the exercise of that power in the Declaration of Rights. We do not rely on that test specifically nor adopt its use, but mention it to remove any doubt on the standing issue. See *Flast* v. *Cohen*, 392 U.S. 83 (1968), per Douglas concurring, "Taxpayers can be vigilant private attorneys general."

[7]*Ark. Const.*, Art. 5, § 20 provides that "The State of Arkansas shall never be made Defendant in any of her Courts." We agree with the

This controversy presents issues of contemporary legal and political significance, and comes at a time when dwindling government revenues are of paramount concern not only to those who wield the sovereign power of government but to the citizenry as a whole. Special interest groups of every variety seem to increasingly haunt the halls of power seeking any favor, tax exemption or otherwise, which the government might bestow upon them. It appears to be the way and nature of our political system that persons of similar or connected interests lobby for favor in the executive and legislative chambers of government in order to acquire some affirmative benefit or otherwise obtain relief from some burden through legislation, regulation and/or governmental discretion. However, the proper sphere of the judicial power is not to supplant the decisions of legislators and government executives with our notions of economic prudence. Rather, our charge is that of jurisprudence. As other branches of government are tied to the bounds of law established by our constitution, so is the judiciary. This is not to suggest or say that legislative or executive actions are above judicial scrutiny. To the contrary, the very essence of judicial review lies in the belief of our founders that governmental actions should be (as should be all things) subject to scrutiny and questioning. It is only through scrutiny that we forestall arbitrary and capricious government and give meaning and substance to the safeguards of our state and federal constitutions. The courts are not designed to legislate and may not constitutionally do so. But, the courts are indeed responsible for insuring that those who are so empowered execute and perform their duties permissible within constitutional bounds.

In this case we are confronted with a legislative exercise of the state's power of taxation. Such a power is, as here, properly exercised by the state legislature. It is not unbridled power however. The means are restricted by numerous

---

Chancellor that this provision is general in nature and conflicts with the more specific provision granting taxpayer standing (Art. 16 § 13). Since that provision implies a right to sue which would be rendered meaningless if Art. 5 § 20 controlled, we employ the well known rule of construction holding that the more specific controls the general. *Ridgeway* v. *Catlett*, 238 Ark. 323, 379 S.W.2d 277 (1964).

specific and general prohibitions within the constitutions, both state and federal. For instance, the 14th Amendment to the federal constitution requires the state to provide procedural due process in the exercise of its powers. The taxing power may not be exercised so as to excessively burden interstate commerce. Likewise, the federal equal protection clause prohibits arbitrary classifications by the state resulting in different treatment of persons similarly situated in the exercise of its powers.

The Arkansas State Constitution imposes restrictions of its own on the power to tax and the corresponding power to grant immunities from taxation. The General Assembly is prohibited under Art. 2, § 18 from granting privileges or immunities which upon the same terms shall not equally belong to all citizens. Also, the State's 14th Amendment prohibits exercising state powers through local or special legislative acts.

Appellants, as private retired taxpayers, argue that the within tax exemptions constitute an immunity which does not upon the same terms apply to all citizens and further that the tax exemptions legislation are special acts, and therefore are in violation of the plain language of Art. 2, § 18 of, and Amendment 14 to, the Constitution of Arkansas. Appellants urge this Court to abandon the "rational basis" and "reasonable distinction" tests as outdated exceptions to Art. 2, § 18 and likewise to declare the "arbitrary separation" exception to Amendment 14 invalid. Although not raised or argued on appeal by Appellants, we will also consider if federal equal protection is infringed *sua sponte.* (see footnote 3)

To accomplish our examination, we must first determine what standard is to be applied and the extent of our own constitutional power of judicial review.

We have reviewed the numerous decisions issued by this Court in the past as well as those of the United States Supreme Court involving constitutional challenges based on equal protection type arguments as here. And, although we find the courts employing varying standards of review to

legislation depending upon the circumstances of its enactment and operation, we find that tax legislation is generally reviewed under the traditional rational basis test. This standard continues to find acceptance in contemporary jurisprudence. We think the following commentary written ninety years ago explains the standard well:

"The Court can only disregard the Act of the legislature when those who have the right to make laws have not merely made a mistake, but have made a very clear one — so clear that it is not open to rational questioning. That is the standard of duty to which courts bring legislative acts; that is the test which they apply — not merely their own judgment as to constitutionality, but their conclusion as to what judgment is permissible to another department which the constitution has charged with the duty of making it. This rule recognizes that having regard to the great, complex, ever-unfolding exigencies of government, much which will seem unconstitutional to one man, or body of men, may reasonably not seem so to another; that the constitution often admits of different interpretation; that there is often a range of choice and judgment; that in such cases the constitution does not impose upon the legislature any one specific opinion, but leaves open this range of choice; and whatever choice is rational is constitutional." JAMES THAYER, *The Origin and Scope of the American Doctrine of Constitutional Law*, 7 Harv. L. Rev. 129, 143-44 (1893).

The rational basis test has long been applied by the Supreme Court in reviewing state legislation under the equal protection clause of the 14th Amendment which imposed special burdens or granted exemptions from such burdens through classification schemes.[8] The standard has been used by this Court in reviewing government actions

---

[8]See, *Gulf, C. & S. F. Ry.* v. *Ellis*, 165 U.S. 150 (1897). The equal protection clause has been used to invalidate commonplace economic regulations on many occasions despite the early view that the scope of the equal protection clause as part of the Civil War Amendments was confined to review of state discrimination against Negroes as a class in the *Slaughter-House Cases*, 83 U.S. (16 Wall.) (1873).

under the Arkansas privileges and immunities guarantee.[9] And, since we have previously held that whether an act is "special" depends upon whether it "by force of an inherent limitation arbitrarily separates some person, place or thing from those upon which, but for such separation it would operate"; and since a determination of the arbitrary nature of an act is precisely the goal of the rational basis test, we have no hesitancy to find it applicable to any Amendment 14 analysis also.[10]

Under the rationality standard of review, we must presume the legislation is constitutional, i.e. that it is rationally related to achieving a legitimate governmental objective.[11]

---

[9]*DuPree, et al* v. *Alma School District,* 279 Ark. 340, 651 S.W.2d 90 (1983); *see also, U-Drive-Em* v. *Wiseman,* 189 Ark. 1163, 76 S.W.2d 960 (1934) where this Court initially embraced the rational basis test.

[10]*Board of Trustees of Municipal Judges and Clerks Fund* v. *Beard,* 273 Ark. 423, 620 S.W.2d 295 (1981). This Court also indulged the legislation with a presumption of constitutionality which is likewise an essential part of rationality analysis. It is noted by the Court that many laws are challenged jointly under Art. 2, § 18, Amend. 14, and the federal equal protection clause. This is undoubtedly due to jurisprudential thought that each of the separate provisions all aim to prohibit arbitrary classifications and favoritism by the legislative branch. We feel they all fall under the general umbrella of the "equality" and "equal protection" guarantees which are found within various sections in separate parts of our constitution. *See,* footnote 3 of the *DuPree* case, *supra; see also,* Hickman, J., concurring. "Equality . . . is a principle repeatedly contained in our constitution . . . under Art. 2, § 3, Art. 2, § 18, and even in Amend. 14." We further note that we do not consider the present legislation to be "local" since that term denotes only geographic classifications as opposed to "special" legislation, which concerns classifications of persons. *See, Beard, supra.*

[11]We are aware of the insight of Justice Stone in the famous footnote 4 of *United States* v. *Carolene Products Co.,* 304 U.S. 144, 152 (1938) where he laid the groundwork for the now fundamental doctrine of varying standards of review. He stated, "There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, . . . " We have considered the application of this reasoning here since Amend. 14 and Art. 2, § 18 are specific restrictions on the means of exercising state power, including the power of taxation. However, we leave for another day, the question of whether the burden of proof should be shifted to the government where the legislation appears on its face to fall within a specific restriction on the exercise of power. Here we must

This presumption we indulge locates the burden of proof. It imposes upon the party against whom it is directed the burden of proving the unconstitutionality of the legislation, i.e. that the act is *not* rationally related to achieving *any* legitimate objective of state government under any reasonably conceivable state of facts. *See, Lindsey* v. *Natural Carbonic Gas Co.,* 220 U.S. 61 (1911); *DuPree, supra; Thompson* v. *Continental Southern Lines, Inc.,* 222 Ark. 108, 257 S.W.2d 375 (1953).

The learned Special Chancellor below reasoned that the legislature may have sought to encourage entry into public service by granting the challenged tax exemptions. This superficially seems to be a reasonably conceivable and legitimate state objective. And, appellants chose not to question what interest a state government might have in encouraging entry into the *federal* civil service and military since the exemptions extend to those public servants also. This possible over-inclusion was never challenged in spite of the Chancellor's correct assertion in his opinion that he possessed the power to fashion a partial remedy by holding the legislation invalid only in part and leaving the remainder intact. We have long held that such a remedy is lawful even where no severance clause appears in the act. *Stanley* v. *Gates,* 179 Ark. 886, 19 S.W.2d 1000, 1007 (1929).

In any event, the judiciary is allowed to hypothesize and we now reach a conceivable basis for the exemptions which we conclude are rational, reasonably distinctive and not arbitrary. It causes us to defer to legislative purpose because there is a rational basis for the tax exemptions. The General Assembly may have sought to encourage pensioners from without the state to relocate in Arkansas at retirement and for those who have worked here to remain. It cannot be

exercise judicial restraint under the well settled principle of *stare decisis,* deferring to established reason. Neither are we called upon here to decide if more exacting judicial scrutiny is correspondingly called into play when the government power to tax infringes upon fundamental rights such as those embraced within the first amendment of the federal constitution, *see, Bob Jones University* v. *United States,* ___ U.S. ___, 103 S.Ct. 2017, 76 L. Ed. 2d 157 (1983), and held equally specific when applied to state action via the 14th Amendment.

disputed that a tax incentive acts as a lure to both. Again it is raised: Why restrict the incentive only to public retirees? Is this classification not arbitrary? We must reply in the negative.

The legislature, who is better equipped to investigate such matters, might have reasonably concluded that the reduction in revenue resulting from the exemptions is only worth the sacrifice if the lure works. It may have decided that the lure would operate at the desired level only among those retirees who are strongly and uniformly organized such as former public employees. We take note of the fact, as perhaps the legislature did, that public retiree organizations have enormous membership roles and disseminate vast amounts of literature to their members advising them of which states provide the most incentives and benefits to senior citizens who have retired. The legislature may have investigated and found that this disseminated literature and recommendations have a tremendous impact on where public employees live after retiring.

Before it is said that such hypothesizing is far afield, we re-emphasize that our role is not to discover the *actual basis* for the legislation. Our task is merely to consider if *any* rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose. Since we can reasonably conceive of lawful purposes for the state's classification scheme, it may not be held to have been arbitrarily enacted. Therefore, since the state's classification confers a benefit upon public employees which is available to all workers of this calling and class throughout Arkansas, we hold that Art. 2, § 18 and the Federal 14th Amendment are not violated. Likewise, we hold that the within challenged tax legislation is not special legislation for it is not arbitrary. We are mindful of *Beard* admonitions regarding the judicial creation of any exceptions to the special acts prohibition. Here we create no exception because we conclude that the tax exemption acts are not special acts as that term has been defined. It is not

enough that the state has separated some class from the operation of a law. The separation must be arbitrary.

The burden fell upon Appellants to demonstrate that no rational basis whatsoever could reasonably be conceived that demonstrated lawful purpose on the part of the legislature in passing the tax exemption legislation. The Chancellor was correct in his finding that Appellants failed to carry this admittedly heavy burden.

We note the reference in the opinion written by Justice Hays in *DuPree, supra,* at 9:

> "This court is not now engaged in — nor is it about to undertake — the 'search for tax equity' which defendants prefigure. As defendants themselves recognize, it is the Legislature which by virtue of institutional competency as well as constitutional function is assigned that difficult and perilous quest."

All tax measures usually involve some discrimination. The very graduated income tax system under which we all live requires some to pay a larger portion of their earnings in taxes than others and allows certain exemptions to some persons but none to others, but these discriminations are not constitutionally impermissible as long as they are not arbitrary and are supported by a rational and legitimate basis. It is simply impermissible for us to evaluate the wisdom of legislation. After all, certain legislation may seem foolhardy, absurd, and unfair to one person, or group of persons, but on the other hand, appear wise, prudent, and reasonable to another person, or group of persons. In sum, the interpretations and choices for kinds and types of legislation for the legislature are many and whatever choice, be it a mistake or not, is constitutional if that choice is rational.

The Decree of the Special Chancellor is affirmed.

Joining in this decision are Special Chief Justice RICHARD L. MAYS and Special Justices GEORGE PLASTIRAS, WILLIAM M. CLARK and JERRY B. DOSSEY.

Special Justice JOHN W. MANN, JR. concurs with the majority.

Special Justice RICE VAN AUSDALL concurs.

RICE VAN AUSDALL, Special Justice, concurring. Legal training, scholarship, intellectual honesty, and a firm belief in judicial restraint, dictate I join in the majority opinion. Conscience dictates that I write this concurrence.

Were this Court coming to this question anew, without the prior decisions standing clearly as precedents setting out the strained distinctions and somewhat tortuous reasoning justifying the exemptions, this decision might well be different. But while it may be true such precedents are not rules of property (*Board of Trustees* v. *Beard*, 237 Ark. 423, 620 S.W.2d 295 [1981]), it has, at least to this writer's mind, become a part of the "constitutional fabric." (See 13 Ark. L. Rev. 238, 249). When considering this question, the words of Omar come rushing back to mind: "Could you and I, with Him conspire, to grasp this sorry scheme of things entire; Would not we shatter it to bits; And remould it, nearer to the heart's desire?" That the present scheme of things, with exemption heaped upon exemption, distinctions overdrawn, and fanciful reasons grasped out of the air to justify a special interest, is sorry, seems to only state the obvious.

But this writer, well steeped in the tradition of judicial restraint, and whose warp and woof of his early legal learning was that the role of the judiciary is to construe the law, and leave the law making to the legislature, must abstain from, at this late date, agreeing that the "rational basis" and "reasonable distinction" tests are to be overturned. They have become a part of this State's "constitutional fabric."

Probably no useful purpose is served by observing that these exemptions point out the inordinate, and unhealthy, influence that the beneficiaries of these enactments have in the legislative halls. But in the interest of conscience, this observation must be made.

But finding that the legislation is pernicious, is not a finding that it is unconstitutional. Judicial restraint, if it is to have meaning, must be observed, even in the face of legislative mischief, so long as that mischief is not contrary to the constitution. This Court has settled what the constitution says to this question. Reversing these decisions would be a violation of the restraints inherent in the judicial process, and cause this Court to engage in the same type of breach of trust that the General Assembly did when that body enacted these exemptions. As no less a personage than Justice Felix Frankfurter points out, judicial restraint is the "essence in the observance of the judicial oath."

We are not unmindful of the concept of the "result oriented" method of deciding constitutional questions, and that this approach enjoys considerable popular currency in the legal community. 27 Ark. L. Rev. 583, 601. This approach frankly admits the role of the judiciary to be a law giver, governed not so much by the written words of the constitution, and the precedents, but by the needs of society. This concept views the constitution as Darwinian in nature, always in a state of becoming, changing as the forces in society change. This view appears to be premised on the notion that judges are best equipped to determine what is best for the common weal. In addition to this premise having doubtful validity in fact, it smacks of elitism.

To a free society, the constitution is the political and governmental Holy Writ. It is the shrine before which every knee must bend, and every tongue confess. This fidelity is demanded no less from judges, elected or appointed, than any other member of society. Changes in this document should proceed only from the collective genius of the body politic.