Enid BOSTIC, an Incompetent, by Estelle Searcy HOLMES, Her Guardian *v.* Wesley M. BOSTIC Estate

83-174                                    662 S.W.2d 815

Supreme Court of Arkansas
Opinion delivered January 9, 1984

*Lohnes T. Tiner,* for appellant.

*Killough & Ford,* by: *Robert M. Ford,* for appellee.

Darrell Hickman, Justice. This is an appeal from an order of the Probate Court of Cross County approving a final accounting by the executor of the estate of Wesley M. Bostic. We affirm the trial court.

The appellant raises three issues on appeal: the court erred in refusing to delay the closing of the estate pending a circuit court action; the court erred in its interpretation of the will; and, the court erred in approving the final accounting. The only question that concerns us is the handling of the crops and rents from the two pieces of property, but we are severely handicapped because the appellant has failed to indicate exactly what the trial court did wrong in this regard, and for that reason the judgment must be affirmed.

The objections filed below were made by the appellant, Estelle Searcy Holmes, guardian of Enid Bostic, who is the widow of Wesley Bostic and is incompetent. The appellant objected to the court hearing the final accounting because a lawsuit, which had been filed by the appellant against Fain Bostic, the executor of this estate, was pending in circuit court. That suit is essentially one of conversion, alleging that the executor commingled estate funds with those belonging to Enid Bostic and asking for damges of some $42,000. The trial court found the pending circuit court suit did not bar hearing the final accounting, approved in most respects the final accounting, and ordered the estate closed.

The judge held he must interpret one provision of the will. It provided that all debts and final expenses, including those of administration, be paid from "my cash assets or assets which can be readily converted to cash." The judge held this meant that the expenses and debts were to be paid from personalty first, then from realty. He had ordered the sale of the 1980 crops held in storage to this end. Part of the crops was from 240 acres of land owned by the entirety; the other from 80 acres owned individually by the deceased. The crops had been commingled and the executor could not say what proceeds came from the entirety land and what came from that owned individually by the deceased. After an extensive hearing the judge ordered that certain estate expenses, attorney's fees, physician charges, one-half of the H & R Block bill, and CPA expenses were not to be charged to any property owned by Enid Bostic.

The court made the specific finding:

. . . . the assets of the two estates were commingled. However, the Court has examined the accountings carefully and has concluded that except for the matters discussed hereafter, neither the personal representative nor the estate has derived pecuniary advantage by virtue of the acts of the executor. There is absolutely nothing to indicate any self-dealing or ill motive. Quite to the contrary, Mr. Fain Bostic has demonstrated complete honesty and good faith in dealing with the assets of the estates. It is true the assets were commingled, but his motives were pure. He served as 'informal guardian' at a time when no one else came forward. He should not be penalized for his efforts.

The appellant touches on the problem of crops but actually argues that there was $58,967 in cash available and this should have been used to pay the debts. But it is undisputed this was not property of the estate; rather it was the proceeds from monies or certificates of deposit that went to certain designated heirs on death of Mr. Bostic. It was not estate property and, therefore, not "cash" to be used to pay debts.

Wesley Bostic died November 28, 1980. His will was admitted to probate on December 10, 1980. It was not until December 8, 1981, that Estelle Searcy Holmes was appointed guardian of Enid Bostic who is incompetent and resides in a nursing home. The circuit court suit was filed on April 28, 1982, and is still pending. According to the evidence presented, all of her expenses have been paid since the estate was opened.

There was a specific finding that the executor had not converted any money to his own use. The court found:

The personal representative — in good faith — managed the entire farm (individually owned and jointly owned properties) as one farming unit. He did not separate the income from the separately owned lands. Estelle Walker voiced no objection to Fain Bostic's appointment and did not have herself appointed as guardian until almost one year after the death of Mr.

Bostic. The Court finds that Estelle Walker knew that Fain Bostic was serving as 'informal guardian.'

Our only concern regards the crops stored for 1980 and the rental income received after 1980. The appellant simply argues this income was treated wrongly. The crops from the 240 acres held by the entirety were undoubtedly the property of Enid Bostic. Arkansas recognizes that an estate by the entirety can exist in personalty. *Moore* v. *Denson,* 167 Ark. 134, 268 S.W.2d 609 (1924); *Western Union Telegraph Co.* v. *Bush,* 191 Ark. 1085, 89 S.W.2d 723 (1936). Once crops are severed they become personalty. The 1980 crops were severed and in storage. There is no evidence of exactly in whose name those crops were stored, but since they came from property held by the entirety, the survivor would have strong claim to them. *Cummings* v. *Greif Bros. Cooperate Co.,* 202 F.2d 824 (8th Cir. 1953); *Moore* v. *Denson, supra; Patton* v. *Rankin,* 68 Ind. 245 (1879); *Whitlock* v. *PSC,* 239 Ind. 680, 159 N.E.2d 280 (1959). The crops grown after the 1980 season were rents and profits and, unmistakably, the property of Enid Bostic. But, we cannot say from this record whether the trial court applied the law we have recited; neither can we say he did not. The judge was correct in ruling that personalty could be considered an asset to be sold to pay the debts of the estate and any crops belonging to the estate would be personalty. Apparently, the judge found that after all the expenses paid on behalf of Enid Bostic were taken into consideration, there was no net gain to her. It is the responsibility of the appellant to demonstrate error. The appellant has been unable to show where the trial court erred. Absent that showing, we do not reverse the trial court's decision. *The Corning Bank* v. *Rice,* 278 Ark. 295, 645 S.W.2d 675 (1983).

The other two arguments are without merit. The lawsuit pending in circuit court is not a claim against the estate, it is a suit against the executor individually. The appellant does not dispute this. Therefore, the court did not err in closing the estate. There was no pending claim against the estate as defined by Ark. Stat. Ann. § 62-2003 (b) (Repl. 1971); Ark. Stat. Ann. § 62-2601 (Repl. 1971). The claim was against the executor individually. *Digby, Executor* v. *Cook,* 200 Ark. 1004, 142 S.W.2d 228 (1940).

The trial court heard extensive testimony about the accounting. In fact, it is as though he conducted an in-court accounting. His acceptance of the accounting was based upon sworn testimony and records. He found only minor adjustments had to be made. Specifically, the estate was ordered to reimburse the guardianship for (1) attorney's fees; (2) Wynne Medical Clinic bill; (3) one-half of H & R Block bill; and (4) the bills of the CPA. The estate was allowed to set-off against the total of these figures, the proceeds from the sale of the 1980 crop. The proceeds of the sale more than offset the reimbursement.

The trial judge was to decide the facts, judge the credibility of witnesses, and it was within his discretion to decide whether the estate should be closed. We find that the action of the trial court was not clearly erroneous; therefore, the judgment is affirmed.

Affirmed.

HOLLINGSWORTH, J., not participating.