John W. HALL, Sr., et al
*v.* Jimmie Lou FISHER, et al

84-212                                                    685 S.W.2d 803

Supreme Court of Arkansas
Opinion delivered March 18, 1985

*John Wesley Hall, Jr.;* and *Henry & Duckett,* by: *Stephen L. Curry,* for appellant.

*Steve Clark,* Att'y Gen., by: *Curtis L. Nebben,* Deputy Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The State of Arkansas, like most states, assists its counties financially by distributing part of the State's revenues, called county turnback funds, to the counties every year. Since the enactment of the 1973 Revenue Stabilization Act, the formula for distribution has been to divide 75% of the funds equally among the 75 counties and to divide the other 25% proportionately by

population according to the most recent federal decennial census. Ark. Stat. Ann. § 13-523 (C) (Repl. 1979).

This suit for a declaratory judgment invalidating the statute was brought by certain Pulaski County taxpayers, who assert that the distribution formula has no rational basis and is therefore an illegal exaction and a denial of equal protection. The original defendants were the State Treasurer and other state officers. Pulaski County intervened as a plaintiff, and the other 74 counties were brought in as defendants. After a trial during which much testimony and many exhibits were introduced, the chancellor dismissed the suit with prejudice, finding that the plaintiffs had not sustained their burden of proving that there is no rational basis for the formula.

The single argument for reversal is that the trial court's finding is clearly erroneous. We cannot agree.

The plaintiffs admittedly had the burden of proving the absence of any rational basis for the formula. *Schweiker* v. *Wilson*, 450 U.S. 221 (1981); *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). In *Schweiker* the court pointed out that if a classification in economic legislation has some reasonable basis, it is not invalid even though it lacks mathematical nicety and results in some inequity. It was also said:

> This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary.

Pulaski County's grievance centers on proof that, although its population gives it the largest sum received by any county in turnback aid, on a per capita basis it received, in 1982 for example, only $2.63 per person, the lowest amount for any county, in contrast with the maximum of $33.24 per person received by Calhoun County. If the counties are classified in larger groups, in 1980 those having

a population of more than 45,000 received an average of $3.65 per person, those in the middle group an average of $7.34 per person, and those below 20,000 in population an average of $14.68 per person.

All the proof shows, however, that population is by no means the only factor to be considered. Primarily, turnback funds reimburse the counties at least in part for the cost of services that counties are required by state law to provide. Among the services specifically mandated are the administration of justice by means of the courts, law enforcement protection, the maintenance of jails, the assessment and collection of property taxes, the keeping of public records, and all services required to be performed by county officers and departments. Ark. Stat. Ann. § 17-3802 (Repl. 1908). In addition to the costs of the required services, the maintenance of each county's road system creates a financial problem that varies from county to county. Other services provided voluntarily by some counties include fire protection and waste disposal.

The existing formula undoubtedly benefits the poorer and less populous counties at the expense of the richer and more populous ones, but the evidence does not show that such a state policy is without a rational basis. Moreover, there are indications that still other weighty factors to be considered in arriving at a fair distribution formula include comparative local wealth, total assessed property values with possible adjustments for differences in the percentage of market value being assessed, the extent to which the residents of each county have taxed themselves to the full extent allowed by state law, and the total area of federally owned tax-exempt land within each county. For the most part, those important elements in the general problem cannot be determined with any measure of certainty, so that among many possible formulas there is necessarily much leeway for the exercise of sound legislative judgment.

The plaintiffs' two principal witnesses both testified that in their opinion there is no rational basis for the existing formula, but neither witness was a disinterested expert. Rather to the contrary, one was the incumbent

Pulaski County county judge and the other a professor who had worked for four years in Little Rock's budget department and for two years as the county's budget director. Their opinions were opposed by that of Dr. Frank Troutman, who testified that there is a rational basis for the State's policy and who supported his conclusion with calculations tending to demonstrate a close inverse correlation between the ranking of the counties in order of wealth and their ranking in the amount of turnback funds being received.

The chancellor was right in concluding from the proof that the plaintiffs had failed in their difficult task of proving a negative, that the legislative formula has no rational basis whatever. In closing, we emphasize two matters that are of particular significance. One, no witness for the plaintiffs suggested a specific formula that would be superior to the one that has been in force for more than ten years. There were many general criticisms of the State's formula and much discussion of the factors that ought to be considered, but no concrete remedy was offered. Two, of all the important factors that have been brought up for consideration, the only one that can be determnined with certainty is comparative population. It is also a factor that affects many other lesser elements in the problem, such as the need for courts, for police protection, and indeed for most county services. And that very factor is the one selected by the legislature as part of a formula otherwise based on numerical equality. Perhaps a larger allocation on the basis of population might have been more equitable, but that is a determination to be made by the General Assembly, where all the counties are represented by comparative population, not by the courts on the basis of the testimony in this case.

Affirmed.