Robert M. EUBANKS, III, Insurance Commissioner, et al.
*v.* NATIONAL FEDERATION STUDENT
PROTECTION TRUST, et al.

86-58                                         721 S.W.2d 644

Supreme Court of Arkansas
Opinion delivered December 22, 1986
[Rehearing denied January 26, 1987.*]

*Legal Division of the Arkansas Insurance Department*, by:

---

*Glaze, J., not participating.

David B. Simmons, for appellant.

*Howell, Price, Trice, Basham & Hope, P.A.*, by: *William H. Trice, III*, for appellee.

GEORGE ROSE SMITH, Justice. The principal appellee, National Federation Student Protection Trust, is an association whose membership includes local schools in Arkansas and throughout the United States. The Trust annually offers an accident insurance program to its member schools, with students and school employees being eligible for the insurance. On July 19, 1985, after some preceding correspondence, an attorney in the State Insurance Commissioner's office wrote a letter to the Kansas insurance agency which administers the insurance program, stating that the Trust's program would not be in compliance with the Arkansas Insurance Code until the group policy and certificates had been approved by the Insurance Department.

Upon receipt of that letter the Trust, without resorting to its administrative remedy before the Commissioner, filed this suit to enjoin the Commissioner from interfering with the Trust's sale of the insurance in Arkansas. The other plaintiffs are the Chicago insurance company that writes the master policy, the Kansas insurance agency, and the Nashville, Arkansas, insurance representative who travels the state selling the plan to school districts. The complaint was filed four days after the July 19 letter. It states a variety of grounds for injunctive relief, one being that the Commissioner's Bulletin 15-81, on which the attorney's letter was based, is arbitrary and capricious. On the day the complaint was filed the chancellor signed an ex parte temporary restraining order which, after the case had been tried, was made final by the decree entered on November 26, 1985. The Commissioner's appeal was filed in this court under Rule 29(1)(c).

The Commissioner makes two arguments for reversal, but we need discuss only his first point, that the chancellor erred in finding the Bulletin to be arbitrary and capricious. We emphasize at the outset that the plaintiffs, though having the burden of proof, offered no evidence to support their allegation of arbitrariness and capriciousness. No one from the Commissioner's office, for example, was called to explain the basis for the Bulletin. The defendants did not supply the deficiency. Consequently the trial court's ruling in effect declared that the Bulletin is invalid on its

face. We cannot agree with that conclusion.

The Bulletin provides that if the parent pays the entire premium, a student accident plan cannot coordinate benefits with other insurance or declare itself to be "excess," that is, applicable only to the extent that a claim is not covered by other insurance. The Bulletin goes on to provide that if the school and the parent both pay part of the premium, the benefits can be coordinated. Finally, if the school pays the entire premium, "the plan can be anything," including being excess insurance. The chancellor's decree recites that the Commissioner's classification according to who pays the premium is capricious and arbitrary, because the insured has the same expectation of benefits regardless of who pays the premium.

The facts about the insurance plan are simple. The Trust annually obtains a basic policy and makes the coverage available to its member schools. The Trust itself pays nothing to the insurance company and receives no commission. The Arkansas representative sells the plan to school districts. He testified that in 1984 his gross premium income was between $500,000 and $600,000, on which he receives a commission. The insurance company or its agency provides the school districts with information about the coverage and furnishes printed handbills, often called flyers, which are distributed to the children with instructions to take the flyers home to their parents. The flyer used in this instance provided a parent with basic information about the insurance, including a statement that it was excess coverage.

On the facts before us it is evident that Bulletin 15-81 was issued as a consumer-protection measure. Our Insurance Code contains various provisions for the protection of purchasers of insurance. For instance, the Code prohibits misrepresentations made to obtain insurance business, Ark. Stat. Ann. § 66-3015 (Repl. 1980), prohibits excessive premiums, § 66-3023, and broadly authorizes the Commissioner to make reasonable rules and regulations to aid in putting the provisions of the Code into effect. § 66-2111. One of the Commissioner's responsibilities has been to safeguard the interest of consumers who buy insurance.

We think it plain that the Commissioner was acting within his authority in seeking to protect the parents in the present situation. We do not imply that the coverage offered through the

Trust in 1985 was not a good value, but the area is undeniably one in which scrutiny is proper. Whatever premiums the insurance company is to receive must be paid by the school district, by the parents, or by both. Our school districts perennially operate on tight budgets. When the school board, composed of elected citizens, decides to spend school funds for the insurance of school children, parents may reasonably assume that the outlay is prudent, whether the district pays all or only part of the premium. But the situation is vastly different when the parent pays all the premium himself without the school board's having committed its own funds. Here the parent sees only the flyer, which has a semblance of official sanction by reason of having come from the public school. Accident coverage for a student during school time is $12 a year, which might very well seem to be a bargain, and so it might have been. But the July 19 letter to the Trust, which was attached as an exhibit to the complaint, not only referred to the group policy and the certificates but went on to say: "In view of the Department's previous problems with the advertisement material used by representatives of the [Trust], the Department is requesting that all solicitation material be filed for approval."

The standard for judicial review of administrative action is that the action will be regarded as arbitrary and capricious only where it is not supportable on any rational basis. *Partlow* v. *Ark. State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980). In the field of equal protection, a classification is not arbitrary if it rests upon a difference having a fair and substantial relation to the purpose of the measure. *Corbitt* v. *Mohawk Rubber Co.*, 256 Ark. 932, 511 S.W.2d 184 (1974). The burden of showing that a rule has no rational basis is on the party challenging the rule. *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). The plaintiffs did not sustain that burden; they did not even attempt to. The Commissioner's Bulletin is not invalid on its face, which in the absence of proof concludes our inquiry.

Reversed.

NEWBERN, J., dissents.

DAVID NEWBERN, Justice, dissenting. Many Arkansas schools belong to the Arkansas Activities Association. The Association is a member of the National Federation Student

Protection Trust. The Trust offers accident insurance programs to its members, thus students attending schools belonging to the Association become eligible for the insurance. The insurance policy is issued by All American Life Insurance Co. to the Trust at the Trust's place of residence, Missouri. The Trust issues certificates of insurance to the participating schools.

A question arose as to the propriety of this insurance plan, and in August, 1985, Arkansas insurance officials began informing the schools that the Trust was not authorized to sell the insurance in this state. The reason ultimately given was that the coverage was only "excess" coverage and that if the parents of the students paid the premiums, neither "excess" coverage nor any kind of apportionment of coverage would be allowable. "Excess" coverage means that the insurer pays only that portion of covered expenses which is not covered by another insurer.

The insurance commissioner's policy is expressed in his Bulletin No. 15-81, entitled Guidelines for Student Accident Plans. The bulletin says (1) if the parent pays the entire premium, the policy will be treated as an "individual policy," and benefits may not be coordinated, reduced or limited to "excess" only coverage, (2) if the school pays part of the premium and the parent pays part, then the plan is considered a group plan and coordination of benefits may occur, and (3) if the school pays the entire premium, then the plan may "do anything," including "be excess," as long as the contractual language, presumably of the insurance agreement, is followed.

The Trust and the other appellees, the insurer and agents, sought and received a permanent injunction barring the appellant, Eubanks, who is the Arkansas Insurance Commissioner, from interfering with the sales of the insurance. The chancellor found that the classification contained in the bulletin, based on who pays the premium, was arbitrary and capricious. He also ruled that the certificates of insurance would be submitted to the commissioner but that they would not be disapproved if they were in compliance with the terms and conditions of the policies approved by the insurance department in the state where they were issued.

The commissioner raises two issues on appeal. First, he contends it was error to find his bulletin's provisions to be

arbitrary and capricious. Second, he contends it was error to limit review of the insurance certificates issued pursuant to group policies by out of state insurers to consideration of matters of form and their accuracy in reflecting the terms and conditions of the group policy. We should affirm on both points, and this opinion will address both although the majority opinion only considers the former.

*1. Bulletin No. 15-81*

The commissioner states that the bulletin is based on his Rule and Regulation 21 which also says when the parent pays the premium for school accident coverage "the benefits cannot be reduced." The commissioner argues, however, that his position in this appeal is based on neither the bulletin nor the rule but upon legislation. He cites Ark. Stat. Ann. § 66-3710 (Supp. 1985) which provides:

> This Act [§§ 66-3709—66-3711] shall be applicable to all group contracts of disability insurance sold, delivered or issued for delivery, renewed, or offered for sale in this State, including those issued by Hospital and Medical Service Corporations, except group contracts for employees whose employer pays 100% of the premiums.

The commissioner then contends that this section makes § 66-3709 (Supp. 1985) inapplicable to policies where an employer pays 100% of the premium. Section 66-3709(1) provides that group disability policies sold in Arkansas may not provide for reduction in benefits "because of the existence of other insurance except to the extent that the aggregate benefits with respect to the covered medical expenses incurred under such contract and all other like insurance with other insurers exceed all covered medical expenses incurred." Section 66-3709(2) provides that no group disability policy sold in Arkansas "shall provide for reduction in the amount of such disability benefits payable to the insured to the extent of and because of the existence of other such coverage, unless the policy provides a minimum of fifty ($50) dollars per month."

The classification found objectionable by the chancellor is not the one found in this legislation. The problem is not the identification of which group plans may coordinate benefits and

the circumstances under which they may do so. Rather, the problem created by the bulletin is the exclusion of any student accident plan in which the insured (parent) pays 100% of the premium from consideration as a group plan. As the appellees point out, not only does the legislation relied on by the commissioner not address this question, but there is no legitimate basis for holding that, for example, where an employee has a disability insurance premium withheld from his paycheck his insurer may be considered a participant in a group plan but the insurer of a parent who sends the premium to a participating school may not. In this case we are not even dealing with employers' and employees' group policies. Here we are concerned with a student accident plan which is clearly a group insurance policy. We are considering whether a regulatory bulletin which goes far beyond the applicable statutes, §§ 66-3709(1) and 66-3709(2), and is in conflict with them, is arbitrary.

In short, the commissioner has given us no creditable reason to reverse the chancellor's determination that the classification espoused in Bulletin 15-81 is arbitrary and capricious. We initially accept as correct the decision of the trial court, and the burden is on the appellant to convince us otherwise. *Dildine* v. *Clark Equipment Co.*, 285 Ark. 325, 686 S.W.2d 791 (1985); *Bostic* v. *Bostic Estate*, 281 Ark. 167, 662 S.W.2d 815 (1984).

In addition I believe the bulletin not only improperly avoids application of § 66-3709 to some group policies but that it is indeed arbitrary on its face. If a regulatory bulletin provided that an orange would be treated as an orange when purchased by a school lunchroom but would, in order to avoid certain legislation applicable to all oranges, be characterized as an apple in any case where the parent sent the lunch money, surely we could detect arbitrariness in the bulletin. No amount of consumer protectionist rhetoric can remove that sort of arbitrariness. Consumers and the public in general would be better served if this case were affirmed and the commissioner and the general assembly were made to face up to the deficiencies in the insurance code which the commissioner should not have to, or be allowed to, circumvent by issuing a magic regulatory bulletin.

## 2. Review of certificates

The commissioner's argument on this point has two parts. He contends that the chancellor erroneously limited the insurance department's review of certificates delivered to Arkansas persons insured under an out of state group policy because, (1) legislation gives the commissioner authority which is not so restricted and (2) the state has the authority thus to regulate such certificates.

The general powers and duties of the Arkansas Insurance Commissioner as head of the Arkansas Insurance Department are prescribed in Ark. Stat. Ann. § 66-2110 (Repl. 1980). They are: to enforce the insurance code, to exercise powers reasonably implied by the code as conferred upon him, and to investigate as expressly authorized and as he may deem proper "to determine whether any person has violated any provision of this code or to secure information useful to the lawful administration of any such provision." Ark. Stat. Ann. § 66-2111 (Repl. 1980) provides in part:

> (1) The Commissioner may make reasonable rules and regulations necessary for or as an aid to the effectuation of any provision of this code. No such rule or regulation shall extend, modify, or conflict with any law of this State or the reasonable implications thereof. . . .

The commissioner thus has no powers except those provided in the insurance code and those reasonably implied by the code.

There is a debate abroad about whether the insurance authorities of one state may indirectly regulate the issuance and provisions of insurance policies issued in another state by regulating such matters as sales of group coverage and issuance of certificates to the citizens of the state wishing so to regulate. *See* 19 J. Appleman, Insurance Law and Practice, §§ 10341 and 10342 (1982) and Annot., 72 A.L.R. 2d 695 (1960). The Arkansas commissioner argues he should be allowed to regulate in the case before us now by disapproving the certificates issued by the Missouri insurer so as to protect Arkansas citizens, and that the Missouri insurer has only to issue an "Arkansas rider," bringing the policy in line with the Arkansas code as it covers Arkansas citizens, to avoid disapproval.

I need not discuss the conflicts of law or state power issue of the authority of the Arkansas Insurance Commissioner to perform this indirect regulation of the Missouri group policy upon which the certificates being considered here are based, for there is no statutory authority for the commissioner to disapprove a group insurance certificate on the basis that its underlying policy provides only "excess" coverage.

The commissioner cites Ark. Stat. Ann. § 66-3209 (Supp. 1985) which, in part, requires that group insurance certificates, which are to be delivered by an out of state insurer to insured persons in Arkansas, be filed with and approved by the commissioner. Section 66-3210 (Supp. 1985) then provides:

> The commissioner shall disapprove any form filed under Section 276 [§ 66-3209], or withdraw any previous approval thereof, only if the form:
>
> (1) Is in any respect in violation of or does not comply with this code.
>
> (2) Contains or incorporates by reference, where such information is otherwise permissible, any inconsistent, ambiguous, or misleading clauses, or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract.
>
> (3) Has any title, heading, or other indication of its provisions which is misleading.
>
> (4) Is printed or otherwise reproduced in such manner as to render any provision of the form substantially illegible or not easily legible to persons of normal vision.
>
> (5) Is an individual disability contract in which the benefits are unreasonable in relation to the premium charged.
>
> (6) Provided, upon the petition of an insured under a general liability insurance policy, if a substantial restriction of coverage previously provided in such policy is deemed by the insurance commissioner to be detrimental to the best interest of the public, such policy form may be disapproved. . . .

The chancellor based his decision to limit the commissioner's

disapproval of the certificates to those not accurately reflecting "the terms and conditions of policies filed with and approved by the insurance department in the state where issued" upon his conclusion that § 66-3210 "deals primarily with ambiguous, misleading clauses, deceptive language or illegible type." The commissioner argues his power to disapprove may not be so diminished because subsection (1) permits him to determine compliance with "the code."

The commissioner's argument thus is that by the power to see to it that the certificates comply with the code the statutory requirements applicable to group policies generally may be applied to those issued out of state and subject to regulation also in the state where they are issued.

In *Standard of America Life Insurance Co.* v. *Humphreys,* 257 Ark. 681, 519 S.W.2d 64 (1975), we held that a certificate of insurance issued to an insured by a group insurer is not a policy of insurance but is only evidence of what the policy contains. Given this clear distinction between insurance policies and insurance certificates, my view is that § 66-3210(1) gives the commissioner the authority to disapprove a certificate if it conflicts with any provision of the code pertaining to certificates as opposed to the provisions pertaining to insurance policies. The commissioner has no statutory authority to force, in effect, the terms of an out of state group disability policy to comply with the code's policy requirements by wielding the disapproval power over certificates issued in this state. We have been cited to no statutes specifically regulating certificates of insurance, as opposed to insurance policies, except for §§ 66-3209 and 66-3210. Here again, the code may need revision, but we cannot do it.

While the chancellor's conclusion that these sections limit the commissioner's review of certificates essentially to matters of deception and form is supported by his reading of § 66-3210, for the sake of clarity we should modify paragraph five of his order to provide:

> All American Life Insurance Company shall be required to file the certificates of such policies with the Arkansas Commissioner of Insurance and such certificates shall not be disapproved by the commissioner if they comply with the requirements of Ark. Stat. Ann. § 66-3210 (Supp.

1985).

Given the requirements of § 66-3210 aimed at misleading or deceptive forms, the chancellor's expressed concern that the certificates accurately reflect the provisions of the policy would be met. We should take out the chancellor's reference to the filing and approval with the insurance department in the state where issued because foreign state approval and with whom a policy is filed are matters not covered by § 66-3210.

### Conclusion

The commissioner's purposes in apparently seeking to apply the insurance code selectively and in seeking to regulate out-of-state insurance companies without statutory authority are probably praiseworthy. My reasons for making this dissenting opinion fairly detailed with respect to both points is to suggest that code revisions may be needed despite the support for the commissioner's regulatory provisions found in the majority opinion. If the regulatory scheme continues to expand beyond statutory authority, surely the time will come when a majority of this court will put down its collective foot.