The Honorable David Malone State Senator P.O. Box 1048 Fayetteville, Arkansas 72702-1045
Dear Senator Malone:
This official Attorney General opinion is rendered in response to three questions that you have presented concerning the placement of cellular towers. More specifically, you have asked:
 (1) May a county, through its general police powers, enact an ordinance which puts a temporary moratorium on cellular towers while it contemplates regulation?
 (2) May the county enact regulations controlling cellular towers under its general police powers without the necessity of having a county-wide comprehensive zoning ordinance?
 (3) Would the Federal Telecommunications Act prohibit either of these ordinances?
RESPONSE
Question 1 — May a county, through its general police powers, enact anordinance which puts a temporary moratorium on cellular towers while itcontemplates regulation?
It is my opinion that a county may, either through its general police powers or through its zoning authority (and subject to any applicable state or federal law), enact an ordinance which places a temporary moratorium on cellular towers while it contemplates regulation.
Counties are given the express authority to enact zoning ordinances that prohibit certain property uses in designated areas. See A.C.A. §§14-17-209. Moreover, such ordinances, like all ordinances, can provide for temporary measures. See A.C.A. § 14-14-904(i).
Counties can also enact such ordinances under their more general police power. The provisions of A.C.A. § 14-14-801(13) authorize counties to exercise power that is not inconsistent with others laws, and that is necessary for the effective administration of the county's authorized services and functions. A.C.A. § 14-14-801(13). This general grant of authority is broad enough to encompass an ordinance such as you have described, which could likewise be made temporary.
I therefore conclude that a county may, under either its zoning authority, or under its more general police power, enact an ordinance placing a temporary moratorium on cellular towers while it contemplates further regulation. Any such ordinance enacted by the county must be consistent with any applicable state law, see A.C.A. § 14-14-801(13); A.C.A. § 14-14-807(4); A.C.A. § 14-14-808; A.C.A. § 14-17-206, and with any applicable federal law. See response to Question 3, below.
Question 2 — May the county enact regulations controlling cellular towersunder its general police powers without the necessity of having acounty-wide comprehensive zoning ordinance?
It is my opinion that counties may, either through their zoning authority, or their general police powers (and subject to all applicable state and federal laws), enact regulations controlling cellular towers without the necessity of having a county-wide comprehensive zoning ordinance.
County-wide zoning plans, as contemplated by the county zoning statutes (A.C.A. § 14-17-201 et seq.) are not mandatory. Indeed, the county zoning statutes authorize zoning ordinances that will affect only part of the county. See A.C.A. § 14-17-209. Therefore, counties may enact an ordinance such as you have described under the authority of the zoning statutes without having a county-wide, comprehensive zoning ordinance.
Counties may also enact such ordinances under the authority of their general police powers, as discussed in response to Question 1, above, or under their general grant of authority to enact planning and zoning laws independently of any county planning board. See A.C.A. § 14-14-807(4); A.C.A. § 14-17-203(f). See also Johnson v. Sunray Servs., 306 Ark. 497,816 S.W.2d 582 (1991) (although planning boards may prepare zoning ordinances, their authority to do so is not exclusive, and does not divest the quorum court of its authority to adopt standards for the placement of landfills.)
I therefore conclude that counties may, either under the specific authority granted in the zoning statutes (A.C.A. § 14-17-209), or under their general police powers, enact ordinances that regulate cellular towers, without having a county-wide, comprehensive zoning ordinance. Such ordinances, must, as noted in response to Question 1 above, be consistent with all applicable state and federal laws.
Question 3 — Would the Federal Telecommunications Act prohibit either ofthese ordinances?
I must note initially that the Federal Telecommunications Act is quite complex and may be implicated by a variety of fact situations that may or may not have been anticipated. A thorough response to this question would require familiarity with all possible scenarios in which the Act could come into play. Moreover, the interpretation of federal laws is not one of the primary roles of this office. For these reasons, I cannot opine comprehensively concerning that Act's effect upon the type of ordinance that you have described. I would suggest that you present fact-specific questions concerning the Act to the office of the U.S. Attorney.
Nevertheless, I will bring to your attention a provision of the Act that could impact upon your question. Section 332 of the Act states in pertinent part:
(7) Preservation of local zoning authority.
 (A) General authority. Except as provided in this paragraph, nothing in this Act [47 USCS §§ 151 et seq.] shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
 (B) Limitations. (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof
 (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
 (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
 (ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
 (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
 (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
 (v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.
 (C) Definitions. For purposes of this paragraph
 (i) the term "personal wireless services" means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services;
 (ii) the term "personal wireless service facilities" means facilities for the provision of personal wireless services; and
 (iii) the term "unlicensed wireless service" means the offering of telecommunications services using duly authorized devices which do not require individual licenses, but does not mean the provision of direct-to-home satellite services (as defined in section 303(v) [47 USCS § 303(v)]).
47 U.S.C. § 332(7).
The above-quoted provision from the Act indicates that, although local zoning authority is generally preserved, local governments must remain cognizant of certain limitations upon that authority. For example, paragraph 7(B)(i)(II) could be interpreted as prohibiting a moratorium. On the other hand, paragraph 7(B)(ii), because it allows local governments a "reasonable period of time" in which to grant requests to provide wireless service, could be read as allowing a temporary moratorium, during which the local government gathers relevant information concerning the placement of cellular towers. Under this reading of paragraph 7(B)(ii), the provisions of paragraph 7(B)(i)(II) would prohibit only apermanent moratorium.
This was essentially the holding in Sprint Spectrum, L.P. v. City ofMedina, 924 F. Supp. 1036 (W.D. Wash. 1996). In that case, Sprint, a wireless service provider, argued that a city's six-month temporary moratorium on the issuance of permits for wireless communications facilities violated paragraph 7(B)(i)(II) of § 332 of the Act, and argued that the moratorium had the effect of prohibiting wireless service in the city. The court rejected the argument, finding that the temporary moratorium did not violate paragraph 7(B)(i)(II). In so holding, the court stated:
 The City's moratorium, however, is not a prohibition on wireless facilities, nor does it have a prohibitory effect. It is, rather, a short-term suspension of permit-issuing while the City gathers information and processes applications. Nothing in the record suggests that this is other than a necessary and bona fide effort to act carefully in a field with rapidly evolving technology. Nothing in the moratorium would prevent Sprint's application, or anyone else's, from being granted.
924 F. Supp. 1039.
Although the decision in Sprint Spectrum is not binding authority for Arkansas, it does, nevertheless, give some indication of how a court might interpret the Act. Until the Act has been interpreted through further court decisions, it is my opinion that the effects of the limiting provisions will depend largely upon the particular fact situation and the determinations of the authority implementing the Act.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh