The Honorable Tracy Pennartz State Representative Post Office Box 10441 Fort Smith, Arkansas 72917
Dear Representative Pennartz:
I am writing in response to your request, submitted on behalf of a law firm apparently representing the City of Fort Smith, for my opinion on various questions arising from the following reported facts:
 It is believed that a local, non-profit corporation, has acted as a community-based residential facility providing housing for adults who have been adjudicated or convicted of a sexual or violent offense or of any other criminal offense that would constitute a Class C Felony or higher (the website for the Arkansas Department of Corrections lists the facility, along with other entities throughout the state, as a facility that provides transitional housing for released felons.) It is further believed that the entity will continue to do so. Consequently, questions have been raised as to the applicability of A.C.A. § 12-25-101 and the mechanics of applying that statute.
Against this backdrop, you have posed the following questions:
 1. Who should conduct the public hearing outlined in A.C.A. 12-25-101? *Page 2 
 2. Who should take responsibility for the cost of conducting the hearing, e.g., cost of notice to nearby residents as outlined in A.C.A. 12-25-101?
 3. What should be done with the results of the information obtained from conducting the hearing as outlined in A.C.A. 12-25-101?
 4. Can the costs of conducting the hearing be passed on to the non-profit entity necessitating the hearing?
 5. Who should be responsible for requesting the hearing, i.e., the municipality or the non-profit entity?
 6. Who should be responsible for receiving the request to hold the hearing?
 7. Can the municipality enact ordinances that elaborate further on these issues?
 8. Can the municipality enact an ordinance prohibiting the operation of such community based residential facility absent approval by the municipality's governing body?
 9. Inasmuch as A.C.A. 12-25-101 seems to require a hearing before a community based residential facility housing the identified adults can provide such housing, what legal responsibility does the Arkansas Department of Corrections have in ensuring the statute has been complied with before listing such entity as "approved" transitional housing?
RESPONSE
Your first six questions appear to be based upon a mistaken assumption regarding the scope of A.C.A. § 12-25-101. This statute imposes a public-hearing requirement only as a precondition for approving the initial location or construction of a community-based residential facility. It does not contemplate conducting a public hearing to test the legitimacy of an already operating facility, *Page 3 
which appears to be what your questions imply is required. With respect to what you term "the mechanics of applying" A.C.A. § 12-25-101, the statute provides no clear guidance regarding what entity should conduct the referenced hearing, what the effect of the hearing should be, or what entity should be charged with its costs. The law is thus too vague to allow me to provide any real guidance regarding your first six questions, which in any event do not seem to bear upon the specific factual circumstances giving rise to your request. As a general matter, legislative clarification is warranted regarding what entity should ultimately approve the location or construction of a community-based residential facility and what entity should order, fund and conduct the public hearing preceding approval of its location or construction.
With respect to your seventh question, particularly in light of the inapplicability of the statute to the specific situation you have described, it is unclear what ordinances you envision might "elaborate on these issues." As a general proposition, however, a city may enact only those ordinances authorized by statute. A city has zoning authority that might authorize its controlling the location or construction of community-based residential facilities so long as state law does not indicate otherwise. Section 12-25-101 expressly conditions approving the location or construction of a community-based residential facility upon a public hearing having been conducted. It is unclear whether the referenced approval might take the form of a municipal ordinance.
With respect to your eighth question, an ordinance approving the location or construction of a particular facility appears to be permissible under the Code. It is consequently unclear why a city would need to enact an ordinance permitting itself to do what the Code already permits. I question, however, whether a city could by ordinance prohibit the operation of an established facility that complies with all otherwise applicable state law.
With respect to your ninth question, the "approval" of transitional housing by the state is subject to the requirements for licensure set forth at A.C.A. § 16-93-1603. The entity that issues such licenses is not the Arkansas Department of Corrections (the "ADC"), as your question implies, but rather the Arkansas Department of Community Correction (the "ADCC") in accordance with regulations issued by the Arkansas Board of Corrections. Although A.C.A. § 12-25-101 requires that a hearing be conducted before a facility's location or construction is approved, neither A.C.A. § 16-93-1603 nor Board regulations expressly condition ongoing *Page 4 
licensing on a determination that such a hearing has occurred. It is unclear whether the facility at issue in your request was in operation prior to the 1997 enactment of A.C.A. § 12-25-101. If it was, the hearing requirement applicable to new facilities under that statute would not apply and hence would not bear on a licensing determination. If the facility was located and constructed after the effective date of the statute, it may be that the state should have established as a condition of initially issuing a license that the public hearing required under the statute had occurred. Only a finder of fact could determine what licensing requirements might have applied under the particular circumstances.
Question 1: Who should conduct the public hearing outlinedin A.C.A. 12-25-101?
As noted in the above summary, if, as you suggest, your request relates to a licensed community-based residential facility that is already in operation, it is questionable whether the statutory hearing requirement, which relates only to facilities whose operation is in the planning stage, would apply. Moreover, in my opinion, if the facility was constructed prior to the 1997 enactment of the statute, [1] no hearing was even required to approve its location or construction.[2]
Addressing your question more generally, when a public hearing is clearly required to approve a facility's location or construction, it is unclear which of the entities recited in the statute should conduct the hearing. The statute at issue, [3] which has never been interpreted by this office or any appellate court, provides as follows: *Page 5 
 (a)(1) No state agency, board, commission, or governing body of any municipality or county shall approve the location or construction of any community-based residential facility housing juveniles or adults adjudicated or convicted of any sexual or violent offense or any other offense that would constitute a Class C felony or higher, even if the facility otherwise conforms to applicable zoning ordinances, until a public hearing is conducted in the municipality or county of the proposed location of the facility at least thirty (30) days prior to the contracting for the acquisition of any property on which to locate the proposed facility or any existing structure in which to locate the proposed facility by the owner, operator, or care provider of the proposed facility.
 (2) No community-based residential facility housing juveniles or adults adjudicated or convicted of any sexual or violent offense or any other criminal offense that would constitute a Class C felony or higher shall be located or constructed within any municipality or county of this state until a public hearing is conducted in the municipality or county of the proposed location of the facility at least thirty (30) days prior to the contracting for the acquisition of any property on which to locate the proposed facility or any existing structure in which to locate the proposed facility by the owner, operator, or care provider of the proposed facility.
 (b) All residents within one thousand feet (1000') of the proposed location of the facility shall be notified by mail at least ten (10) days prior to the day of the hearing.
(Emphasis added.)[4] *Page 6 
The statute just quoted is unclear regarding what entity should conduct the public hearing called for in both subsections (a)(1) and (a)(2). The statutory language contains the singularly unhelpful, passive-voice directive that a "community-based residential facility" of the sort described, irrespective of what applicable zoning laws might otherwise permit, not be "located or constructed" within an affected political subdivision "until a public hearing is conducted." Subsection (a)(1) prohibits a range of authorities — viz., any "state agency, board, commission, or governing body of any municipality or county" — from approving any such "location or construction" until the referenced hearing has occurred. Left unaddressed is which of the itemized entities is, in fact, to be charged with approving the location or construction of the proposed facility — a determination presumably to be made by whatever entity conducts the hearing.
In considering the range of entities that might be charged with conducting the hearing, the question arises whether the appropriate entity is identified in the highlight phrase "by the owner, operator, or care provider of the proposed facility." The pertinent inquiry in considering this possibility is (1) whether the phrase just quoted modifies the term "public hearing," in which case it would indeed identify "the owner, operator, or care provider" as charged with conducting the hearing; or (2) whether the phrase modifies the term "contracting for the acquisition of any property on which to locate the proposed facility or any existing structure in which to locate the proposed facility," in which case "the owner, operator, or care provider" would merely be identified as a potential party to a contract to obtain property on which to locate a facility, leaving totally unaddressed the question of who should conduct the hearing.
Pursuant to the following principle of statutory construction, the second of these two possible readings would appear to apply:
 Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or *Page 7 
phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.[5]
Given the absence of any indication that the legislature intended otherwise, I believe that the phrase "by the owner, operator, or care provider" should be interpreted as referring only to its immediate antecedent, "contracting for the acquisition of any property on which to locate the proposed facility or any existing structure in which to locate the proposed facility." Left open, then, is the question of which of the entities referenced in the statute — a category of candidates that admittedly includes the prospective "owner, operator, or care provider" of the proposed facility — should be charged with the responsibility of conducting the hearing as a condition of approving the facility's location or construction. As an executive officer, I am unauthorized to perform the legislative task of specifying what entity should perform this task. Legislative clarification of these issues is clearly warranted.
Having offered this analysis, I will again note that my tentative conclusions regarding this matter might be moot in light of the conclusions set forth in the opening paragraph of my response to this question.
Question 2: Who should take responsibility for the cost ofconducting the hearing, e.g., cost of notice to nearby residents asoutlined in A.C.A. 12-25-101?
Again, if no hearing was required under the particular circumstances giving rise to your request, this question would appear to be moot.
As a general proposition, absent legislative clarification, the answer to this question is unclear. One might plausibly argue, on the one hand, that "the owner, operator, or care provider" of a proposed facility, as the entity presumably standing to gain financially by approval, should bear this cost or, on the other hand, that some governmental entity charged with planning such matters on the public's behalf should do so. Again, not being charged with making such policy determinations, I must defer to the legislature's future clarification of this matter. *Page 8 
Question 3: What should be done with the results of theinformation obtained from conducting the hearing as outlinedin A.C.A. 12-25-101?
The statute — which, as you may have gathered, I consider far from a model of clarity — fails altogether to indicate not only by whom, but also how, public input should be used in determining whether to approve the proposed location or construction of a community-based residential facility. To be sure, the very fact that the legislature requires a public hearing implies that public input should in some sense factor into that decision. Read literally, however, the statute requires only that the public hearing be held prior to making a determination. Again, legislative clarification is warranted.
Question 4: Can the costs of conducting the hearing be passedon to the nonprofit entity necessitating the hearing?
Once again, I will assume in the ensuing analysis that the circumstances would mandate currently conducting a hearing in a particular instance. As discussed above, it is questionable whether any such assumption would be warranted under the circumstances giving rise to your question.
The term "passed on" in your question is problematic inasmuch as it suggests that the cost of the hearing is in the first instance incurred by some entity other than the referenced "non-profit entity necessitating the hearing." As reflected above, it is unclear what entity should incur the cost of conducting the hearing. The statute is specifically silent on the question of whether a nonprofit entity inclined to own, operate or provide care in a community-based residential facility might be charged with the cost of conducting a public hearing relating to the location or construction of that facility. As an executive officer, I cannot perform the essentially legislative function of determining which entity should be charged with the expense of conducting the hearing.
Question 5: Who should be responsible for requesting thehearing, i.e., the municipality or the non-profit entity?
For reasons set forth above, it is unclear which of these two entities, if either, is obliged to request a required public hearing regarding the proposed location. It may be that, rather than awaiting a request, whatever agency is properly charged with ultimate decision-making authority should itself call for the hearing. I am not *Page 9 
authorized, however, to speculate on this matter. Legislative clarification is warranted.
Question 6: Who should be responsible for receiving therequest to hold the hearing?
For reasons set forth above, I am unable to identify which of the entities listed in subsection (a)(1) of the statute, if any, should receive a "request to hold the hearing" if a hearing is indeed required. Again, whatever agency is properly charged with making a determination regarding the location of a "community-based residential facility" may further be charged with itself calling for the hearing. Legislative clarification is warranted.
Question 7: Can the municipality enact ordinancesthat elaborate further on these issues?
It is unclear precisely what you mean by "elaborate further on these issues." In light of this fact, I can do no more than set forth the general parameters bounding a city's authority to enact ordinances.
Simply put, a city has no powers of any sort other than those expressly granted by the legislature or those inferable by necessary implication as indispensable to the exercise of its express powers. As the Arkansas Supreme Court has declared:
 "Municipal corporations are creatures of the legislature and as such have only the power bestowed upon them by statute or the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). It is well settled that municipal corporations have no inherent powers and can exercise only (1) those expressly given to them by state statute or the Arkansas Constitution, (2) those necessarily implied for the purposes of, or incident to, the express powers, and (3) those indispensable, not merely convenient, to their objects and purposes. Cosgrove v. City of West Memphis, 327 Ark. 324, 938 S.W.2d 827 (1997). Finally, any substantial doubt about the existence of a power in a municipal corporation must be resolved against it. Id.; City of Little Rock v. Cash, *Page 10 277 Ark. 494, 644 S.W.2d 229 (1982); Town of Dyess v. Williams, 247 Ark. 155, 444 S.W.2d 701 (1969)."[6]
Nevertheless, a city has considerable discretion to enact ordinances that bear on its "municipal affairs" — a category that includes "all matters and affairs of government germane to, affecting, or concerning the municipality or its government," with the exception of certain itemized "state affairs" that do not bear on your request.[7] Municipal corporations, in the exercise of what are generally known as their "police powers," have further been legislatively granted the "power to make and publish bylaws and ordinances, not inconsistent with the laws of the state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof."[8] As a general proposition, the validity of an ordinance will turn on whether it comes within the scope of the powers granted to cities and towns, is promulgated in the proper exercise of police powers and bears some reasonable relation to the public health, safety, morals, welfare, comfort, or convenience.[9] This authority is always bounded by the restriction that an ordinance must not be arbitrary, capricious, unreasonable or contrary to state law.[10]
As suggested above, without clarification, I cannot determine what "issues" you contemplate the city addressing and what sort of "elaboration" you envision the city offering. If you are exclusively concerned with a city's powers and obligations with respect to the conduct of a public hearing, I can only opine that a city obviously could not purport by ordinance to alter any legislative requirement regarding such a hearing. In this regard, I am struck by the fact that subsection (a) of the statute quoted above mandates that a public hearing occur before approval of a facility's location or construction "even if the facility otherwise conforms to *Page 11 applicable zoning ordinances" (emphasis added) — a directive that suggests a legislative intention to foreclose any local avoidance-by-zoning of a public hearing regarding the proposed location or construction of any particular community-based residential facility.[11] As noted above, however, although the requirement of conducting a public hearing clearly exists, it is unclear to whom it applies. Perhaps no more can be said than that a city could not by ordinance simply declare that a generally applicable zoning ordinance will obviate the state-mandated requirement that, as of the effective date of the 1997 legislation, a public hearing be conducted as a condition of approving the location or construction of any community-based residential facility intended to house the described offenders. In my opinion, this proscription applies despite the fact that the legislature has acknowledged a city's zoning authority as relevant to the question of whether a residential facility of the sort at issue might be constructed or located at a particular address.[12]
Question 8: Can the municipality enact an ordinanceprohibiting the operation of such community based residentialfacility absent approval by the municipality's governing body?
I assume you are asking whether a city council might by ordinance condition the location and operation of any given residential facility within the city upon the council's expressly approving the facility.
To begin with, a city obviously could not by ordinance simply declare itself the entity statutorily charged with approving the location or construction of such a facility. Although one of the entities listed in the statute has this power of *Page 12 
approval, the Code fails, in my estimation, clearly to identify that entity. Only the legislature, not the city by ordinance, can clarify this matter. Moreover, if the city is indeed the entity charged with approving the location or construction of a facility following the conduct of the required public hearing, any ordinance requiring such approval would appear superfluous.
With respect to a city's authority generally to restrict what you term the "operation" of a facility, I can only repeat that the ADCC is the entity statutorily charged with making licensing decisions. However, as noted above, the ADCC's authority in this regard is bounded by a city's authority through permissible zoning and special-use restrictions to limit the types of construction that may occur in specified locations.
Question 9: Inasmuch as A.C.A. 12-25-101 seems to require ahearing before a community based residential facility housing theidentified adults can provide such housing, what legalresponsibility does the Arkansas Department of Corrections have inensuring the statute has been complied with before listing suchentity as "approved" transitional housing?
The transitional housing listed as "approved" by the state is housing licensed by the ADCC, which performs the licensing function subject to the following statutory guidelines[13]:
 (a) The Board of Corrections shall promulgate rules that shall set minimum standards for all transitional housing facilities in the State of Arkansas.
 (b)(1) The Parole Board, a district court, or a circuit court shall not release a transferee, parolee, or probationer to a transitional housing facility as a resident unless the transitional housing facility provides a copy of a current license issued by the Department of Community Correction under § 16-93-1604.[14] *Page 13 
 (2) The transitional housing facility shall comply with all the standards set by the rules established by the Board of Corrections under subsection (a) of this section.
 (c) The rules described in subsection (a) of this section shall include at least the following:
 (1) Compliance with any local health and safety codes, including housing codes, fire codes, plumbing codes, and electrical codes, set by the jurisdiction or jurisdictions in which the transitional housing facility is located;
 (2) Compliance with any local zoning ordinances;
 (3) Compliance with any state and federal health and safety codes;
 (4) Consideration of geographic dispersement of transitional housing facilities;
 (5) Allowable ratio of transitional housing facility square footage to residents; and
 (6) Allowable ratio of bathing facilities and restroom facilities to residents. . . .
If you are asking whether the state currently conditions its licensing of a community-based residential facility upon a determination that a public hearing of the sort contemplated in A.C.A. § 12-25-101 has occurred, my inquiries suggest that the answer to this question is "no." Given the terms of this statute, such a condition probably should apply to the initial licensing of a facility approved under the statute on or after its effective date. However, neither A.C.A. § 16-93-1603 nor applicable regulations contain any requirement that the ADCC condition licensing under any circumstances upon its determining that a hearing has occurred. Specifically in response to your question, then, under current rules, the ADCC is not obliged to defer "approving" a facility through licensure until it has established that a public hearing possibly required under A.C.A. § 12-25-101 was *Page 14 
in fact conducted. Legislative clarification is warranted regarding whether ADCC is or should be charged with making such a determination.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Acts 1997, No. 626, § 1.
[2] Legislative enactments will ordinarily be deemed to apply prospectively only, unless the intent for retroactive application is clearly expressed or necessarily implied. Chism v. Phelps,228 Ark. 936, 311 S.W.2d 297 (1958); Myers v. CouncilManufacturing, Corp., 276 F.Supp. 541 (E.D. Ark. 1967). Legislation will not be construed as being retroactive if it may reasonably be construed otherwise, and any doubt is resolved against retroactive application. Arkansas Rural Medical StudentLoan Scholarship Bd. v. Luter,292 Ark. 259, 729 S.W.2d 402 (1987). The General Assembly has not characterized the legislation at issue as retroactive, meaning that, under the circumstances, the public-hearing requirement should not apply to facilities in operation at the time the legislation was enacted, irrespective of whether the location or construction of such facilities was publicly approved in some manner. For a more detailed discussion of the issue of when legislation should be deemed to apply retroactively, see Ark. Op. Att'y Gen. No. 2010-032.
[3] A.C.A. § 12-25-101 (Repl. 2009), which was originally enacted pursuant to Acts 1997, No. 626, § 1.
[4] Two other statutes impose materially indistinguishable conditions for the conduct of a public hearing relating to the location of residential programs to treat sexual or other serious violent offenders. A.C.A. §§ Subsection 25-10-134(b)(1) and25-10-135 (Repl. 2002). In a manner that tracks that discussed in my text, infra, both statutes contain an ambiguity regarding which entity should conduct the public hearing. Neither this office nor any court has addressed what entity should conduct the referenced public hearing under either statute. Since you have asked only about the scope of A.C.A. § 12-25-101, I will focus my discussion on that statute.
[5] 2A Sutherland, StatutoryConstruction § 47.33 (4th ed. 1984); see alsogenerally 82 C.J.S. § 333 (1999).
[6] City of Cave Springs v. City of Rogers,343 Ark. 652, 657, 37 S.W.3d 607 (2001), quoting Stilley v.Henson, 342 Ark. 346, 355, 28 S.W.3d 274, 279 (2000).
[7] A.C.A. § 14-43-601 (Repl. 1998).
[8] A.C.A. § 14-55-102 (Repl. 1998).
[9] Wilkins v. City of Harrison,218 Ark. 316, 319, 236 S.W.2d 82 (1951).
[10] Johnson v. Sunray Services, Inc.,306 Ark. 497, 505, 816 S.W.2d 582 (1991).
[11] A similar concern to make case-by-case determinations regarding the locations of such facilities may be reflected in the fact that the City of Little Rock reportedly requires an applicant to obtain a special use permit as a condition of locating within city limits any residential facility designed to house ADC inmates in the course of their rehabilitation. This requirement suggests that the city wants to consider the location of any such facility on an individual basis.
[12] Pursuant to A.C.A. § 16-93-1604 (Supp. 2009), the ADCC is charged with licensing residential facilities in accordance with regulations issued by the Board of Corrections. See response to question 9, infra. Among the factors the ADCC must consider in making its licensing determination is "[c]ompliance with any local zoning ordinance." A.C.A. § 16-93-1603(c)(2); see also
ADDC Administrative Directive 07-01 (effective 2/10/07) (including in the form application for a transitional housing facility license an acknowledgment of compliance with local zoning ordinances or the issuance of a conditional or special use permit); compare
A.C.A. § 16-93-1603(c)(4) (identifying as an additional consideration to be addressed in the rules a "[c]onsideration of geographic dispersement of transitional housing facilities").
[13] A.C.A. § 16-93-1603.
[14] The referenced A.C.A. § 16-93-1604 provides that the ADCC will license any transitional housing facility that abides by the standards required under the statute recited above. A.C.A. § 16-93-1604(b)(2). The rules and regulations followed by the ADCC in making its licensing determinations are further elaborated in Board of Corrections Administrative Regulation 7.8 (effective 12/12/06).